EDP:SP/VC/JDT
F. #2023R00389

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                            23 CR 278 (S-2) (NRM)

RUHEL CHOUDHURY AND IFFAT LUBNA,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN SUPPORT OF
THE GOVERNMENT'S MOTIONS IN LIMINE

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Stephanie Pak
Vincent Chiappini
Joshua Tannen
Assistant U.S. Attorneys
    (Of Counsel)

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT**                                                           1

**RELEVANT BACKGROUND**                                                             2

**ARGUMENT**                                                                        7

    I.    Self-Authenticating Records Are Admissible Without a Custodial Witness................ 7

        1.    Applicable Law ........................................................................................... 7

        2.    Discussion ................................................................................................... 9

    II.    The Record of the 911 Call for John Doe-2's Rescue Is Admissible as a Business Record and Its Content as a Present Sense Impression and Excited Utterance .................. 10

        1.    Applicable Law .......................................................................................... 11

            a.    Present Sense Impressions ...................................................................... 11

            b.    Excited Utterances ................................................................................. 12

        2.    Discussion ................................................................................................. 13

    III.   John Doe-2's Post-Abduction Hospital Records Are Admissible ............................. 15

        1.    Applicable Law .......................................................................................... 15

        2.    Discussion ................................................................................................. 17

    IV.   The Defendants' and Co-Conspirators' Out-of-Court Statements Are Admissible for Their Truth When Offered by the Government and Inadmissible When Offered by the Defendants ............................................................................................................... 20

        1.    The Government Should Be Allowed to Admit Defendants' and Co-Conspirators' Statements ............................................................................................................. 20

        2.    The Court Should Generally Preclude the Defendants from Admitting Their Own Statements or Their Co-Conspirators' Statements .......................................................... 21

    V.    The Court Should Admit Certain Out-of-Court Statements by John Doe-2, John Doe-3, and Certain Other Non-Parties to the Kidnapping ........................................................ 23

        1.    Applicable Law .......................................................................................... 23

        2.    Discussion ................................................................................................. 25

    VI.   John Doe-2's and John Doe-3's Prior Consistent Statements Are Admissible as Non-Hearsay ................................................................................................................. 28

        1.    Applicable Law .......................................................................................... 29

        2.    Discussion ................................................................................................. 30

VII.  The Court Should Admit Evidence Showing Consciousness of Guilt ....................... 31

　　1.  Applicable Law ............................................................................................... 31

　　2.  Discussion ....................................................................................................... 32

VIII.  Evidence of the March 27, 2023 Kidnapping of John Doe-1 Is Admissible Under
Federal Rule of Evidence 404(b) Against Ruhel Choudhury ................................. 33

　　1.  Applicable Law ............................................................................................... 33

　　2.  Evidence of Ruhel Choudhury's Commission of the March 27, 2023 Kidnapping
　　Satisfies the Standards of Admissibility Under Rule 404(b) ........................... 34

IX.  The Defendants Should Be Precluded from Suggesting Evidence Was Unlawfully
Obtained ................................................................................................................... 37

X.  Cross-Examination on John Doe-2's Criminal History and Prior Acts Should Be
Limited ..................................................................................................................... 39

XI.  The Defendants Should Not Be Permitted to Cross-Examine Witnesses with Non-
Verbatim Reports That Have Not Been Signed or Adopted by the Witness or Suggest to the
Jury that the Contents of an Investigative Report Are Statements of the Witness ............... 40

　　1.  Applicable Law ............................................................................................... 40

　　2.  Discussion ....................................................................................................... 41

XII.  The Court Should Preclude Evidence and Arguments That Are Irrelevant, Are
Unfairly Prejudicial, or Invite Jury Nullification .................................................. 42

　　1.  Applicable Law ............................................................................................... 43

　　2.  Discussion ....................................................................................................... 45

　　　a.  The Defendants Should Be Precluded from Introducing Evidence or Argument
　　　Concerning Personal Circumstances, Specific Instances of Good Character or Lack of
　　　Criminal History ............................................................................................. 45

　　　b.  The Court Should Preclude References to Potential Punishment and Collateral
　　　Consequences .................................................................................................. 45

XIII.  The Defendants Should Be Ordered to Disclose Discovery and Trial Exhibits ......... 47

　　1.  Applicable Law ............................................................................................... 47

　　2.  Discussion ....................................................................................................... 49

**CONCLUSION**                                                                                             49

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bermudez v. City of New York,
   No. 15-CV-3240 (KAM), 2019 WL 136633 (E.D.N.Y. Jan. 8, 2019) ................................... 15

Gissinger v. Yung,
   No. CV-04-0534 (BMC), 2007 WL 2228153 (E.D.N.Y. July 31, 2007) .......................... 15, 18

Hodges v. Keane,
   886 F. Supp. 352 (S.D.N.Y. 1995) ........................................................................................ 15

In re United States,
   945 F.3d 616 (2d Cir. 2019)................................................................................................... 44

Melendez-Diaz v. Massachusetts,
   557 U.S. 305 (2009)................................................................................................................. 8

Michigan v. Bryant,
   562 U.S. 344 (2011)............................................................................................................... 17

O'Gee v. Dobbs Houses, Inc.,
   570 F.2d 1084 (2d. Cir. 1978)............................................................................................... 16

Palermo v. United States,
   360 U.S. 343 (1959)............................................................................................................... 41

Phoenix Assocs. III v. Stone,
   60 F.3d 95 (2d Cir. 1995)................................................................................................. 22, 29

Porter v. Home Depot U.S.A., Inc.,
   No. 12-CV-4595 (NGG), 2015 WL 128017 (E.D.N.Y. Jan. 8, 2015)................................... 16

Scoma v. City of New York,
   No. 16-CV-6693 (KAM), 2021 WL 1784385 (E.D.N.Y. May 4, 2021) .......................... 15, 16

Shannon v. United States,
   512 U.S. 573 (1994)............................................................................................................... 46

Shea v. Royal Enterprises, Inc.,
   No. 09-CV-8709 (THK), 2011 WL 2436709 (S.D.N.Y. June 16, 2011) ............................... 17

Sparf v. United States,
   156 U.S. 51 (1895)................................................................................................................. 44

Torcivia v. Suffolk County,
   17 F.4th 342 (2d Cir. 2021) .................................................................................................. 17

United States v. Aguilar,
   No. 20-CR-390 (ENV), 2024 WL 3629471 (E.D.N.Y. July 15, 2024) ................................. 48

United States v. Alberti,
   470 F.2d 878 (2d Cir. 1972)................................................................................................. 40

United States v. Almonte,
   956 F.2d 27 (2d Cir. 1992)....................................................................................... 40, 41, 42

United States v. Ayers,
   No. 20-CR-239 (BMC), 2024 WL 1158686 (E.D.N.Y. Mar. 18, 2024) ............................... 49

United States v. Bakhtiari,
   913 F.2d 1053 (2d Cir. 1990)............................................................................................... 43

United States v. Battaglia,
  No. 05-cr-774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ...................................... 44
United States v. Blackwell,
  853 F.2d 86 (2d Cir. 1988) ............................................................................................... 45
United States v. Bout,
  651 Fed. App'x 62 (2d Cir. 2016) ................................................................................... 7, 8
United States v. Brown,
  254 F.3d 454 (2d Cir. 2001) ................................................................................... 12, 14, 25
United States v. Cardascia,
  951 F.2d 474 (2d Cir.1991) ............................................................................................... 24
United States v. Carter,
  No. 21-CR-681 (NSR), 2024 WL 268248 (S.D.N.Y. Jan. 24, 2024) .................................. 9
United States v. Certified Env't Servs., Inc.,
  753 F.3d 72 (2d Cir. 2014) ............................................................................................... 27
United States v. Clanton,
  769 F. Supp. 3d 147 (E.D.N.Y. 2024) .............................................................................. 40
United States v. Dunnican,
  961 F.3d 859 (6th Cir. 2020) ............................................................................................. 9
United States v. Díaz-Colón,
  651 F. Supp. 3d 468 (D.P.R. 2023) .................................................................................. 44
United States v. Edwards,
  101 F.3d 17 (2d Cir. 1996) ............................................................................................... 43
United States v. Estrada,
  430 F.3d 606 (2d Cir. 2005) ............................................................................................. 39
United States v. Fawwaz,
  691 F. App'x 676 (2d Cir. 2017) ...................................................................................... 23
United States v. Flores,
  945 F.3d 687 (2d Cir. 2019) ......................................................................................... 29, 30
United States v. Forney,
  No. 24-CR-146 (KAM), 2025 WL 2208298 (E.D.N.Y. Aug. 4, 2025) .................................. 8
United States v. Fox,
  No. 23-CR-227 (NGG), 2025 WL 2076664 (E.D.N.Y. July 23, 2025) ................................ 48
United States v. Gagliardi,
  506 F.3d 140 (2d Cir. 2007) ............................................................................................... 7
United States v. Garcia,
  291 F.3d 127 (2d Cir. 2002) ......................................................................................... 34, 36
United States v. Gonzalez,
  399 F. App'x 641 (2d Cir. 2010) ...................................................................................... 23
United States v. Graham,
  No. 14-CR-500 NSR, 2015 WL 6161292 (S.D.N.Y. Oct. 20, 2015) .................................. 24
United States v. Gramins,
  939 F3d 429 (2d Cir. 2019) ............................................................................................... 32
United States v. Hadden,
  No. 23-6822-CR, 2024 WL 4456203 (2d Cir. Oct. 10, 2024) ........................................... 16
United States v. Harris,
  491 F.3d 440 (D.C. Cir. 2007) .......................................................................................... 44

iv

United States v. Heslop,
    225 F.3d 647 (2d Cir. 2000)...................................................................................46
United States v. Hill,
    658 F. App'x 600 (2d Cir. 2016) ............................................................................23
United States v. Howard,
    998 F.2d 42 (2d Cir. 1993).....................................................................................38
United States v. Hsia,
    2000 WL 195067 (D.D.C. Jan. 21, 2000) .............................................................47
United States v. Ibanez,
    328 F. App'x 673 (2d Cir. 2009) .....................................................................11, 12
United States v. Inserra,
    34 F.3d 83 (2d Cir. 1994).......................................................................................34
United States v. Jackson,
    180 F.3d 55 (2d Cir. 1999).....................................................................................23
United States v. Johnson,
    507 F.3d 793 (2d. Cir. 2007)..................................................................................23
United States v. Jones,
    299 F.3d 103 (2d Cir. 2002).............................................................................11, 24
United States v. Komasa,
    767 F.3d 151 (2d Cir. 2014).................................................................................8, 12
United States v. Konstantinovskiy,
    No. 19-CR-408 (MKB), 2024 WL 3360379 (E.D.N.Y. July 10, 2024) .................45
United States v. Kwong,
    69 F.3d 663 (2d Cir. 1995).....................................................................................43
United States v. Leonardi,
    623 F.2d 746 (2d Cir. 1980).............................................................................41, 42
United States v. Lights,
    No. 15-CR-721 (RWS), 2016 WL 7098633 (S.D.N.Y. Dec. 5, 2016) ...................38
United States v. Lyttle,
    460 F. App'x 3 (2d Cir. 2012) ...............................................................................22
United States v. Marcial,
    22 Cr. 208 (AT), 2023 WL 1818548 (S.D.N.Y. Feb. 8, 2023)...............................13
United States v. Marin,
    669 F.2d 73 (2d Cir. 1982).....................................................................................21
United States v. Matera,
    489 F.3d 115 (2d Cir. 2007)...................................................................................36
United States v. McDaniel,
    398 F.3d 540 (6th Cir. 2005) .................................................................................22
United States v. McMahon,
    No. 21-CR-265 (PKC), 2024 WL 896838 (E.D.N.Y. Mar. 1, 2024).....................22
United States v. Mejia,
    545 F.3d 179 (2d Cir. 2008)...................................................................................36
United States v. Mejia-Valez,
    855 F. Supp. 607 (E.D.N.Y. 1994) ..................................................................11, 24
United States v. Mencia-Hernandez,
    No. 23-CR-393 (AMN), 2025 WL 2355624 (N.D.N.Y. July 10, 2025)..................47

United States v. Mergen,
  No. 06-CR-352 (NGG), 2010 WL 1423245 (E.D.N.Y. Apr. 9, 2010) .................................. 33
United States v. Mickens,
  926 F.2d 1323 (2d Cir. 1991)........................................................................................... 31
United States v. Miller,
  626 F.3d 682 (2d Cir. 2010)............................................................................................. 43
United States v. Miller,
  641 F. Supp. 2d 161 (E.D.N.Y. 2009) ......................................................................... 43, 44
United States v. Napout,
  No. 15-CR-252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017)................................. 48
United States v. Obayagbona,
  627 F. Supp. 329 (E.D.N.Y. 1985) ................................................................................... 13
United States v. Odiase,
  788 F. App'x 760 (2d Cir. 2019) ...................................................................................... 22
United States v. Oguns,
  921 F.2d 442 (2d Cir. 1990).............................................................................................. 27
United States v. Ortiz,
  857 F.2d 900 (2d Cir. 1988).............................................................................................. 33
United States v. Otufale,
  740 F.Supp.3d 233 (E.D.N.Y. 2024) .............................................................................. 9, 37
United States v. Paccione,
  949 F.2d 1183 (2d Cir. 1991)............................................................................................ 44
United States v. Paul,
  110 F.3d 869 (2d Cir. 1997)............................................................................................. 43
United States v. Paulino,
  445 F.3d 211 (2d Cir. 2006)............................................................................................. 33
United States v. Perez,
  387 F.3d 201 (2d Cir. 2004)......................................................................................... 31, 32
United States v. Pitre,
  960 F.2d 1112 (2d Cir. 1992).................................................................................. 33, 34, 37
United States v. Purcell,
  967 F.3d 159 (2d Cir. 2020).................................................................................. 29, 30, 31
United States v. Ramsey,
  2023 WL 2523193 (E.D.N.Y. Mar. 15, 2023) ...................................................................... 22
United States v. Ray,
  2022 WL 813942 (S.D.N.Y. Mar. 16, 2022) ....................................................................... 30
United States v. Rodriguez,
  53 F.3d 545 (2d Cir. 1995)............................................................................................... 34
United States v. Romanello,
  No. 22-CR-194 (EK), 2023 WL 8283435 (E.D.N.Y. Nov. 27, 2023).................................... 42
United States v. Rosemond,
  958 F.3d 111 (2d Cir. 2020)............................................................................................. 36
United States v. Russo,
  302 F.3d 37 (2d Cir. 2002)............................................................................................... 20
United States v. Sackett,
  598 F.2d 739 (2d Cir. 1979) ............................................................................................... 9

United States v. Salman,
No. 24-CR-00206 (NCM), 2025 WL 3089279 (E.D.N.Y. Nov. 5, 2025) .............................. 38

United States v. Sebastian,
497 F.2d 1267 (2d Cir. 1974)................................................................................................. 39

United States v. Sepulveda,
15 F.3d 1161 (1st Cir. 1993)................................................................................................... 46

United States v. Smothers,
No. 20-CR-213 (KAM), 2023 WL 348870 (E.D.N.Y. Jan. 20, 2023) .................................... 48

United States v. Steele,
216 F. Supp. 3d 317 (S.D.N.Y. 2016)..................................................................................... 12

United States v. Stein,
473 F. Supp. 2d 597 (S.D.N.Y. 2007)..................................................................................... 38

United States v. Terranova,
750 F. Supp. 3d 15 (E.D.N.Y. 2024) ........................................................................................ 9

United States v. Terry,
702 F.2d 299 (2d Cir. 1983)................................................................................................... 23

United States v. Thai,
29 F.3d 785 (2d Cir. 1994)..................................................................................................... 36

Untied States v. Thiam,
934 F.3d 89 (2d Cir. 2019)..................................................................................................... 22

United States v. Thomas,
116 F.3d 606 (2d Cir. 1997)............................................................................................. 44, 47

United States v. Thomas,
No. 3:13-CR-00141 (VLB), 2014 WL 2168468 (D. Conn. May 23, 2014) ........................... 13

United States v. Tin Yat Chin,
371 F.3d 31 (2d Cir. 2004)....................................................................................................... 8

United States v. Tocco,
135 F.3d 116 (2d Cir. 1998)............................................................................................. 12, 25

United States v. Trujillo,
714 F.2d 102 (11th Cir. 1983) ............................................................................................... 44

United States v. Watts,
934 F. Supp. 2d 451 (E.D.N.Y. 2013) .................................................................................... 46

United States v. Williams,
930 F.3d 44 (2d Cir. 2019)..................................................................................................... 22

United States v. Wilson,
11 F.3d 346 (2d Cir. 1993)..................................................................................................... 38

United States v. Yousef,
327 F.3d 56 (2d Cir. 2003)..................................................................................................... 21

United States v. Yuan Li,
No. 18-CR-302 (BMC), 2020 WL 6393038 (E.D.N.Y. Nov. 2, 2020) .................................... 13

**Statutes**

18 U.S.C. § 1201(a) .......................................................................................................... 1, 36

18 U.S.C. § 3500................................................................................................................ 40, 41

**Rules**

Fed. R. Crim. P. 16(b)(1)(A) ................................................................................ 47
Fed. R. Crim. P. 26.2 ................................................................................ 48, 49
Fed. R. Evid. 401 ................................................................................ 31
Fed. R. Evid. 402 ................................................................................ 31, 37
Fed. R. Evid. 403 ................................................................................ 31, 37, 43, 45
Fed. R. Evid. 404(b)(2) ................................................................................ 33
Fed. R. Evid. 613 ................................................................................ 40
Fed. R. Evid. 613(b) ................................................................................ 42
Fed. R. Evid. 801 ................................................................................ 29
Fed. R. Evid. 801(c)(2) ................................................................................ 25
Fed. R. Evid. 801(d)(2)(A) ................................................................................ 20, 21
Fed. R. Evid. 801(d)(2)(E) ................................................................................ 20, 21
Fed. R. Evid. 803(1) ................................................................................ 11, 24
Fed. R. Evid. 803(2) ................................................................................ 12, 25
Fed. R. Evid. 803(4) ................................................................................ 17, 19
Fed. R. Evid. 803(6) ................................................................................ 8, 9, 13, 16
Fed. R. Evid. 902(11) ................................................................................ 10
Fed. R. Evid. 902(13) ................................................................................ 8

**Other Authorities**

1 McCormick On Evid. § 193.2 (9th ed.) ................................................................................ 39

## PRELIMINARY STATEMENT

On March 23, 2026, the defendants Ruhel Choudhury and Iffat Lubna are scheduled to stand trial on two counts of Kidnapping and two counts of Conspiracy to Kidnap, in violation of 18 U.S.C. §§ 1201(a) and 1201(c), respectively. These counts relate to the brutal May 2023 kidnappings of the individuals described in the Second Superseding Indictment as John Doe-2 and John Doe-3. The government respectfully moves the Court for in limine rulings in advance of trial in the above-captioned matter.[1] These motions would streamline the trial by simplifying the introduction of evidence that does not require custodians and by eliminating irrelevant argument, evidence, and questioning. They would also preserve fairness by ensuring that relevant evidence is admitted and that irrelevant and prejudicial evidence is precluded.

The government seeks rulings:

- admitting self-authenticating records without a custodian;

- admitting the recording and record of a 911 call;

- admitting information from John Doe-2's post-abduction hospital records;

- admitting out-of-court statements of the defendants and their co-conspirators, and precluding the defendants from offering their own and their co-conspirators' self-serving statements;

- admitting certain out-of-court statements from John Doe-2, John Doe-3, and other non-parties;

- admitting John Doe-2's and John Doe-3's prior consistent statements as non-hearsay;

---

[1] The government reserves its right to submit additional motions in limine in the event that other evidentiary issues arise.

- admitting evidence of Ruhel Choudhury's flight from prosecution;

- admitting evidence of Ruhel Choudhury's involvement in the kidnapping of John Doe-1, particularly if he argues that he lacked knowledge or intent or acted under duress as to the kidnappings of John Doe-2 and John Doe-3;

- limiting cross-examination of John Doe-2 and John Doe-3;

- precluding the defendants from cross-examining witnesses based on non-verbatim reports that they have not signed or adopted;

- precluding evidence and arguments that are irrelevant, are unfairly prejudicial, or invite jury nullification; and

- ordering the defendants to disclose discovery and trial exhibits.

For the reasons set forth below, the government respectfully submits that the Court should grant these motions in their entirety.

## RELEVANT BACKGROUND

The Second Superseding Indictment charges three kidnappings: the March 27, 2023 kidnapping of John Doe-1 (Counts One and Two); the May 11, 2023 kidnapping of John Doe-2 (Counts Three and Four); and the May 10, 2023 kidnapping of John Doe-3 (Counts Five and Six). The defendants Iffat Lubna and Ruhel Choudhury are scheduled to stand trial on March 23, 2026 on Counts Three through Six, which charges relate to the kidnappings of John Doe-2 and John Doe-3. Ruhel Choudhury is also currently scheduled to stand trial on June 1, 2026 on Counts One

and Two—the counts that relate to John Doe-1—alongside four other co-defendants. Co-defendant Abu Chowdhury also awaits trial on Counts One through Six.[2]

As relevant to the March 23, 2026 trial, the government intends to prove that in May 2023, Lubna and Ruhel Choudhury committed the brutal kidnappings of John Doe-2 and John Doe-3.

The kidnapping of John Doe-3 occurred first, on or about May 10, 2023. John Doe-3 is a native of Bangladesh who came to America in April 2023 to study English. He was an acquaintance of Lubna; both had attended the same university in Bangladesh. Lubna introduced him to Abu Chowdhury. Abu Chowdhury and Lubna were romantically involved. In the days before the kidnapping, John Doe-3 was staying at Lubna's apartment, and Abu Chowdhury began to press John Doe-3 for information about her. In particular, he repeatedly asked John Doe-3 for the identity of a person to whom Lubna had recently sent money. Abu Chowdhury pleaded with John Doe-3 for information on Lubna, telling him that he needed "to know if she loves [him] or loves [his] money." He promised several times not to repeat to Lubna what John Doe-3 told him. John Doe-3 was reluctant and told Abu Chowdhury: "I don't wanna betray both of you." He eventually complied with Abu Chowdhury's demands, stating, "Okay[.] I'll inform what happened to you." The two spoke in person on May 9. Later that day, Abu Chowdhury texted John Doe-3: "I'm really hurt now but I care for her." Unbeknownst to John Doe-3, Abu Chowdhury broke his promise of secrecy to John Doe-3. On May 10 at 12:37 a.m., Abu Chowdhury texted Lubna: "He said he knows your whole history."

---

[2] Shaidhual Chowdhury was also charged in Counts Five and Six. He pled guilty on May 27, 2025 before the Honorable Peggy Kuo; the Court accepted his plea on July 2, 2025; and he is currently awaiting sentencing.

In the pre-dawn hours of May 10, 2023, John Doe-3 joined Lubna and Abu Chowdhury for a car ride.    Before they left, a text message from Abu Chowdhury to Lubna asked her to "[t]ell him to bring both of his phone[s]."    The three traveled to Hunter's Point in Long Island City where John Doe-3 took photographs of Lubna and Abu Chowdhury.    After returning to the car, Lubna and Abu Chowdhury began to confront John Doe-3 about his statements to Abu Chowdhury concerning Lubna.    Lubna and Abu Chowdhury together then began to beat him and would not allow him to leave the car.    While he was held captive in the car, Lubna and Abu Chowdhury placed a video call to a friend of John Doe-3's.    Lubna and Abu Chowdhury threatened this individual and demanded answers from him about Lubna's reputation in Bangladesh.    Abu Chowdhury recorded the call on one of his phones.

John Doe-3 was held captive throughout the day of May 10.    That night, Abu Chowdhury and Lubna brought John Doe-3 to a location where he was interrogated, berated, beaten, and tortured by Lubna, Abu Chowdhury, and Shaidhual Chowdhury.    Abu Chowdhury made two audio recordings that evening on his phone that document the horrifying ordeal.    The recordings also reveal that the defendant Ruhel Choudhury was present for a portion of the time.

At this point, late on the night of May 10, 2023, with John Doe-3 thoroughly beaten and still held captive, the plot to kidnap John Doe-2 began.    John Doe-2 took English classes in the same program as Lubna.    Days earlier, he had reached out to Lubna by a Microsoft Teams message.    Then, hours into the beating, captivity, and torture of John Doe-3, John Doe-2 called Lubna.    These conversations are incidentally captured in the recording Abu Choudhury had been making of John Doe-3's torture.    During these calls, Lubna agreed to meet John Doe-2 on an apparent date in Jackson Heights, Queens.    Lubna falsely told John Doe-2 that she was single and that she would meet him alone.    At 1:00 a.m. on May 11, 2023, John Doe-2 was waiting at the

agreed meeting place for Lubna when Abu Chowdhury and others ambushed him and forced him into Ruhel Choudhury's waiting Honda Odyssey minivan.    Lubna, too, was inside the vehicle.

After abducting John Doe-2, the kidnappers beat him and robbed him as they drove him around Queens.    A few hours later, Ruhel Choudhury was caught on surveillance cameras exiting Abu Chowdhury's white BMW and withdrawing $1000 from an ATM using John Doe-2's debit card.    Just 20 minutes later, surveillance footage from a gas station depicts Ruhel Choudhury exiting Abu Chowdhury's BMW to use John Doe-2's debit card to make a fraudulent purchase. While holding John Doe-2 captive, Abu Chowdhury and Lubna called John Doe-2's father and threatened to torture John Doe-2 unless his father paid a ransom.

On the evening of May 11, Abu Chowdhury's BMW and Ruhel Choudhury's Odyssey arrived at the Corona Hotel at 112-23 Roosevelt Avenue in Queens.    Lubna escorted John Doe-3 to a hotel room.    Ruhel Choudhury, too, eventually entered the hotel room.    In the early morning hours of May 12, Ruhel Choudhury and Abu Chowdhury left in Ruhel Choudhury's Odyssey.    Later that morning, hotel surveillance footage shows Abu Chowdhury escorting an unsteady John Doe-2 to a hotel room.    In the early morning hours of May 13, John Doe-3 and John Doe-2 each separately exited the hotel several minutes apart.    Both went directly to Ruhel Choudhury's waiting Odyssey.

John Doe-2 was brought to an abandoned house and tied up in the basement, eventually escaping around 9:00 p.m. on May 13.    He arrived at the home of a nearby resident who called 911 on his behalf.    An ambulance arrived and took him to North Shore University Hospital in Manhasset, New York.    According to hospital records, he was covered in dirt with zip ties and duct tape on his wrists and ankles.    He had abrasions on his buttocks, bruising over his body, and blood from his ear.    He remained there for seven days until his discharge on May 19.

Alone and essentially penniless, John Doe-3 was left with nowhere to go and resided with Lubna and Abu Chowdhury for a period of weeks after the kidnapping.

Law enforcement learned first of the kidnapping of John Doe-2. That investigation led to the seizure of two cell phones from Abu Chowdhury during a traffic stop.[3] The government subsequently obtained warrants to search those cell phones. A grand jury in this district charged Lubna and Abu Chowdhury with the kidnapping of John Doe-2 on July 7, 2023. See ECF No. 1. Law enforcement arrested Abu Chowdhury and Lubna on July 10, 2023. Lubna provided a statement to law enforcement following her arrest.[4] In sum and substance, Lubna admitted that she knew John Doe-2 as a classmate; that John Doe-2 asked her to meet at a location in Jackson Heights (where he was in fact abducted); that she sent Abu Chowdhury a photo of John Doe-2; that she went to the location in Jackson Heights with Abu Chowdhury; that John Doe-2 was taken inside a vehicle; and that she was inside that vehicle with Abu Chowdhury. She claimed, however, that the two merely scolded John Doe-2.

Ruhel Choudhury was not charged until the superseding indictment on January 9, 2024. ECF No. 55. The superseding indictment contained five additional defendants.[5] All of the new defendants except Ruhel Choudhury were arrested on January 11, 2024. See ECF Nos. 68, 73, 77, 81. Ruhel Choudhury fled prosecution but eventually surrendered on April 21, 2024.

---

[3] The Court granted Abu Chowdhury's motion to suppress with respect to one of the two cell phones seized from him (his "Red Phone"), while denying his motion to suppress with respect to his other phone (his "Blue Phone"). ECF No. 359 (Oct. 22, 2025).

[4] The Court granted Lubna's motion to suppress a portion of her post-arrest statement. See ECF No. 358 (Oct. 22, 2025). The statements described herein are from the portion of Lubna's statement that the Court did not suppress.

[5] Choudhury's name was initially redacted on the superseding indictment but was unsealed on February 7, 2024. ECF No. 120.

Ruhel Choudhury also made a post-arrest statement.  Although he denied blame for the kidnapping of John Doe-2, he admitted that he knew he was wanted by the police; that he was present for portions of the kidnapping; that he was the individual seen in surveillance footage from the Corona Hotel and the gas station where John Doe-2's debit card was used; and that there was a third kidnapping victim unknown to law enforcement.

Subsequent to Lubna's and Ruhel Choudhury's arrests, on December 16, 2024, a grand jury charged Lubna, Chowdhury, Abu Chowdhury, and Shaidhual Chowdhury with kidnapping and conspiring to kidnap John Doe-3.  ECF No. 200.

## ARGUMENT

### I.  Self-Authenticating Records Are Admissible Without a Custodial Witness

In the event the parties do not reach stipulations as to authenticity and admissibility, the government will move to admit two categories of evidence through certification rather than custodial witnesses—namely, business records and the forensic extractions of cellular telephones—pursuant to Rule 902(11) (certified domestic records of a regularly conducted activity), 902(13) (certified records generated by an electronic process or system), and 902(14) (certified data copied from an electronic device, storage medium or file).

#### 1.  Applicable Law

Federal Rule of Evidence 901(a) requires the proponent of a piece of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is"— to authenticate or identify the item.  "The bar for authentication of evidence under [Federal Rule of Evidence] 901(a) is 'not particularly high.'"  United States v. Bout, 651 Fed. App'x 62, 63 (2d Cir. 2016) (quoting United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007)). "It is met where 'sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity

or identification.'"   Id. at 63-64 (quoting United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir. 2004)).

Under Rule 902(11), evidence can be authenticated through a business record certification without the need to call a records custodian as a witness.   This rule was created "so that the foundation requirements of Rule 803(6) [the business records exception to the hearsay rule] can be satisfied under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses."   United States v. Komasa, 767 F.3d 151, 155 (2d Cir. 2014).   Business records can be authenticated by certification if: (1) the records were "made at or near the time by—or from information transmitted by—someone with knowledge"; (2) the records were "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling"; and (3) "making the record[s] was a regular practice of that activity."   Fed. R. Evid. 803(6).   Admitting business records that have been authenticated by affidavit or certificate does not violate a defendant's rights under the Confrontation Clause because the records are not testimonial.   See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009) ("Business and public records are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.").

Federal Rules of Evidence 902(13) and 902(14) provide a mechanism for parties to authenticate evidence generated by electronic processes or systems.   Specifically, Rule 902(13) allows authentication by certification of "[a] record generated by an electronic process or system that produces an accurate result," and Rule 902(14) does the same for "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification." Among these records are forensic images of cellular telephones.   United States v. Forney, No. 24-

8

CR-146 (KAM), 2025 WL 2208298, at *17 (E.D.N.Y. Aug. 4, 2025) ("Data extracted from a cellular telephone may be self-authenticated under Rule 902(14)."); see also United States v. Terranova, 750 F. Supp. 3d 15, 33 (E.D.N.Y. 2024) (permitting authentication of cellphone extraction without live testimony); United States v. Otufale, 740 F.Supp.3d 233, 249 (E.D.N.Y. 2024) (permitting authentication of electronic records through custodian certifications under Rule 902(13)); United States v. Dunnican, 961 F.3d 859, 872 (6th Cir. 2020) (affirming district court's decision to admit text message evidence extracted from defendant's phone as self-authenticating under Rule 902(14)); cf. United States v. Carter, No. 21-CR-681 (NSR), 2024 WL 268248, at *3 (S.D.N.Y. Jan. 24, 2024) (holding that decrypted iCloud data is self-authenticating under Rule 902(14)).  Excerpts from such records that are generated using standard electronic systems and processes to generate copies for use in discovery and as trial exhibits are examples of data copied from an electronic device, storage medium, or file which may be authenticated by a process of digital identification.  Accordingly, these items of electronic evidence can be authenticated, pursuant to Rules 902(13) and (14), by certification of competent technicians who performed the extractions and generated the copies rather than by the live testimony of those technicians.

2.    Discussion

The government intends to authenticate certain evidence through business record certifications, including records from telephone companies, Bank of America, the Corona Hotel, Microsoft Corp., New York General Consulting (an English language school), and the New York City Police Department.  Each of these records will be accompanied by a certification from a custodian establishing that such records were made at or near the time by (or from information transmitted by) someone with knowledge, were kept in the course of a regularly conducted activity of the business or entity, and making the record was a regular practice of that business or entity. See Fed. R. Evid. 803(6); see also United States v. Sackett, 598 F.2d 739, 742 (2d Cir. 1979)

(hospital records admissible under Rule 803(6) as business records).   Therefore, these records are properly authenticated through business record certifications.   See Fed. R. Evid. 902(11).   The government has provided the defendants copies of the relevant certifications currently in its possession, and it will provide any additional certifications upon receipt from the relevant entity.

The government also intends to admit evidence lawfully seized from cell phones belonging to Abu Chowdhury and Iffat Lubna.   The contents of these devices were extracted by members of the Federal Bureau of Investigation's ("FBI") Computer Analysis and Response Team.   In lieu of calling multiple FBI witnesses to testify about the process of creating the extractions, the government expects to introduce this evidence using certificates under Rule 902(13) and Rule 902(14).   Excerpts from such records that are generated using standard electronic systems and processes to create copies for use in discovery and as trial exhibits are examples of data copied from an electronic device, storage medium, or file which may be authenticated by a process of digital identification.   Accordingly, electronic evidence can be authenticated by certification of a competent technician who performed the extraction and generated the copies rather than by live testimony.

## II.    The Record of the 911 Call for John Doe-2's Rescue Is Admissible as a Business Record and Its Content as a Present Sense Impression and Excited Utterance

The government seeks to admit one 911 call that a civilian (the "911 caller") made on May 13, 2023 at approximately 9:26 p.m. in Queens, New York.[6]   In this recording, the 911 caller reports to the operator that she is requesting medical assistance for a male individual outside her residence, later identified to be John Doe-2, and describes, among other details, his physical

---

[6]    The government will provide a copy of the 911 recording to the Court under separate cover as Exhibit A.

condition and location.    This call constitutes both a present sense impression and excited utterance under the Federal Rules of Evidence and is admissible, even if the 911 caller does not testify.

1.    Applicable Law

a.    Present Sense Impressions

Rule 803(1) of the Federal Rules of Evidence provides an exception to the general rule against hearsay for any statement "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "By its own terms, application of Rule 803(1) has three distinct requirements: i) the statement must describe or explain the event perceived; ii) the declarant must have in fact perceived the event described; and iii) the description must be 'substantially contemporaneous' with the event in question." United States v. Mejia-Valez, 855 F. Supp. 607, 613 (E.D.N.Y. 1994) (internal citations omitted).

By the plain terms of Rule 803(1), a statement may qualify as a present sense impression even if the declarant is not describing an event as it unfolds.    As the Second Circuit has noted, "For statements to qualify as present sense impressions, precise contemporaneity is not required." United States v. Ibanez, 328 F. App'x 673, 675 (2d Cir. 2009).    Because "in many, if not most, instances precise contemporaneity is not possible, . . . a slight lapse is allowable between the event perceived and the declarant's statement." Mejia-Valez, 855 F. Supp. at 613 (citation and internal quotation marks omitted); accord Fed. R. Evid. 803(1) adv. cmte. notes.    "[T]here is no per se rule indicating what time interval is too long." Mejia-Valez, 855 F. Supp. at 613 (citation and internal quotation marks omitted).

The reason for this exception is twofold.    First, the immediacy requirement reduces the opportunity for reflection and thus minimizes the likelihood of deception or fabrication on the part of the declarant.    Second, immediacy also reduces the likelihood that the declarant will have inaccurately remembered the event in question.    See United States v. Jones, 299 F.3d 103,

112 (2d Cir. 2002) ("Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory.").

b.    Excited Utterances

Rule 803(2) of the Federal Rules of Evidence provides another exception to the rule against hearsay for excited utterances.    An excited utterance is a statement "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2).    To qualify as an excited utterance, the proponent of an out-of-court statement must establish the following: i) that a startling event occurred; ii) that the declarant made the statement while under the stress of the excitement caused by the startling event; and iii) that the declarant's statement relates to the startling event.    See United States v. Brown, 254 F.3d 454, 458 (2d Cir. 2001).

"The rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability. An excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2)."    United States v. Tocco, 135 F.3d 116, 127 (2d Cir. 1998).

Courts in this Circuit have regularly upheld the admission of statements as present sense impressions or excited utterances where the declarant relates his or her personal observations soon, though not necessarily immediately, after the events occurred, including in the context of 911 calls and statements to police officers. See, e.g., United States v. Steele, 216 F. Supp. 3d 317, 322 (S.D.N.Y. 2016) (admitting 911 call as present sense impression or excited utterance), Jones, 299 F.3d at 113 (affirming admission of statements to police officer that were "nearly contemporaneous with the event described"); Ibanez, 328 F. App'x at 675 (upholding admission of statement where "maybe 5 minutes" lapsed between the event and the statement"); United

States v. Thomas, No. 3:13-CR-00141 VLB, 2014 WL 2168468, at *5 (D. Conn. May 23, 2014) (finding the elapsed time irrelevant where the statements discussed ongoing events); United States v. Obayagbona, 627 F. Supp. 329, 340 (E.D.N.Y. 1985) (admitting remarks of a law enforcement agent made fewer than fifteen minutes after the delivery of a narcotics sample where the agent could not have made the statement any earlier given the circumstances); United States v. Marcial, 22 Cr. 208 (AT), 2023 WL 1818548 (S.D.N.Y. Feb. 8, 2023) (admitting statements describing events that occurred approximately fifteen minutes prior).

  2. Discussion

  As an initial matter, the 911 recording itself falls within the "business record" exception to the general prohibition on hearsay evidence. See Fed. R. Evid. 803(6); United States v. Yuan Li, No. 18-CR-302 (BMC), 2020 WL 6393038, at *12 (E.D.N.Y. Nov. 2, 2020) (noting that "[911 emergency phone] calls are regularly admitted into evidence as business records" (citations omitted)). Further, the statements made on the 911 call that the government seeks to admit are not testimonial and fall within two exceptions to the general bar against hearsay. Specifically, the statements made during the 911 call constitute both present sense impressions under Rule 803(1) of the Federal Rules of Evidence and excited utterances under Rule 803(2) of the Federal Rules of Evidence.

  The 911 call is a classic present sense impression of a declarant explaining an event that was happening or had transpired moments earlier in her immediate presence. The 911 caller reported John Doe-2 almost immediately after she saw him from inside her house and requested medical assistance for him. The 911 caller's inflected tone of voice at certain points demonstrates that she was startled. Her statements, nevertheless, are straightforward and clear: she repeatedly states that "he looks like he's about to die" and describes his physical condition, such as noting that he was unable to walk. There are no indicia that the statements were calculated for an ulterior

13

purpose or deceptive; this was a 911 call summoning help.  See Jones, 299 F.3d at 112.   The 911 caller is relaying to the operator her contemporaneous impression of John Doe-2's physical appearance and condition.   For example, the 911 operator asked at several points throughout the call where John Doe-2 was, and the 911 caller stated that he was outside her house, in the street.

Moreover, the call is admissible as an excited utterance under Rule 803(2).   First, a startling event had occurred—the 911 caller was at home on a Saturday evening when she saw a man who appeared as if "he looks like he's about to die," "can't walk," was "out of it," and "passed out right now."   The 911 caller also told the operator that John Doe-2 had told her that he needed help and that he had been held captive for days, another startling fact.   Second, the caller was under the stress of the event during the call.   Her tone of voice is inflected at times when she describes John Doe-2's condition, and when medical personnel asks the 911 caller if she would be willing to attempt CPR on John Doe-2, she shrieks and vociferously and repeatedly declines, stating that she does not wish to go outside.   These facts all indicate that the 911 caller was under stress and shaken by the event of seeing John Doe-2 and the concerning state in which she found him.   Third, the 911 caller's statements undoubtedly related to the startling event at issue, namely her discovery of John Doe-2, his physical state, and his obvious need for medical attention. Accordingly, the 911 call satisfies all three elements for admission of the statements as a present sense impression and an excited utterance.   See Brown, 254 F.3d at 458.

Finally, the call is not unduly prejudicial.   The government must prove to the jury that John Doe-2 was kidnapped and where it took place.   The 911 call provides important evidence of not only the fact of John Doe-2's kidnapping, the injuries he suffered at the hands of his kidnappers, and his being held captive in an abandoned house, but also of, as discussed, the location, timing, descriptions of the scene and law enforcement's response.   The 911 call does

14

not reference any defendant in this case or even suggest how or why John Doe-2 had been kidnapped.    Rather, the 911 call merely recounts the circumstances of the 911 caller finding John Doe-2 outside her house and her observations of his physical condition.    Therefore, the contents of the 911 call do not provide a bar to admissibility.    The 911 call should be admitted at trial.

III.    John Doe-2's Post-Abduction Hospital Records Are Admissible

The government intends to introduce medical records related to John Doe-2's seven-day hospital stay at North Shore University Hospital after the kidnapping.    Medical records are admissible as business records pursuant to Federal Rule of Evidence 803(6), and John Doe-2's statements contained therein are admissible as statements made for medical diagnosis or treatment pursuant to Federal Rule of Evidence 803(4).

1.    Applicable Law

"Two exceptions under the Federal Rules of Evidence are relevant when considering the introduction of medical records: the exception for medical records, as expressed in Rule 803(4); and the exception for records kept in the normal course of business, as expressed in Rule 803(6)."    Scoma v. City of New York, No. 16-CV-6693 (KAM), 2021 WL 1784385, at *14 (E.D.N.Y. May 4, 2021).    "Medical records constitute hearsay but may, with proper foundation, 'be admi[tted] under Federal Rule of Evidence 803(6), provided they are prepared in the regular course of business, near the time of occurrence, by a person with knowledge and are properly authenticated.'"    Bermudez v. City of New York, 15-CV-3240 (KAM), 2019 WL 136633, at *10 (E.D.N.Y. Jan. 8, 2019)    (quoting Hodges v. Keane, 886 F. Supp. 352, 356 (S.D.N.Y. 1995) (Sotomayor, J.)) (alteration in original); see also Gissinger v. Yung, No. CV-04-0534 (BMC), 2007 WL 2228153, at *4 (E.D.N.Y. July 31, 2007) ("If properly authenticated and created in the regular course of business contemporaneously with the occurrence by a person with knowledge, medical records can be admissible as business records.").    A "formal certification by

15

the record's custodian" is sufficient to establish the foundation to admit medical records pursuant to Federal Rule of Evidence 803(6).   <u>Scoma</u>, 2021 WL 1784385, at *14.   Federal Rule of Evidence 803(6) expressly allows for the admission not only of records of "act[s], event[s]" and "conditions," but also of "opinion[s]" and "diagnos[es]."   The advisory committee notes on Rule 803(6) make clear that the rule should be interpreted broadly as to medical records:

> Entries in the form of opinions were not encountered in traditional business records in view of the purely factual nature of the items recorded, but they are now commonly encountered with respect to medical diagnoses, prognoses, and test results, as well as occasionally in other areas. . . . In order to make clear its adherence to the latter position [freely admitting diagnostic entries], the rule specifically includes both diagnoses and opinions, in addition to acts, events, and conditions, as proper subjects of admissible entries

Fed. R. Evid. 803(6), adv. cmte. notes.

Furthermore, Federal Rule of Evidence 803(4) permits the admission of a "statement that: (A) is made for — and is reasonably pertinent to — medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."   "Rule 803(4) 'clearly permits admission into evidence of what [a patient] told [her doctor] about her condition, so long as it was relied on by [the doctor] in formulating [her] opinion.'"   <u>United States v. Hadden</u>, No. 23-6822-CR, 2024 WL 4456203, at *3 (2d Cir. Oct. 10, 2024) (quoting <u>O'Gee v. Dobbs Houses, Inc.</u>, 570 F.2d 1084, 1089 (2d. Cir. 1978)); <u>see also</u> <u>Porter v. Home Depot U.S.A., Inc.</u>, No. 12-CV-4595 (NGG), 2015 WL 128017, at *4 n.6 (E.D.N.Y. Jan. 8, 2015) ("Any statement made by Plaintiff contained in the medical record (as opposed to her doctor's diagnosis) would likely also be admissible pursuant to Federal Rule of Evidence 803(4).").   As the advisory committee notes indicate, this exception is not limited to statements made to physicians, however, and may extend "to hospital attendants, ambulance drivers, or even members of the family."   Fed. R. Evid. 803(4), adv. cmte. notes.   Nor

is it limited strictly to statements made by patients.   See Torcivia v. Suffolk County, 17 F.4th 342, 365 (2d Cir. 2021) ("There is no requirement that the statements be made by the patient, or that the statements be made to a physician." (quoting Shea v. Royal Enterprises, Inc., No. 09-CV-8709 (THK), 2011 WL 2436709, at *11 (S.D.N.Y. June 16, 2011))).   The exception includes not only "statements of past conditions and medical history," but also "statements as to causation."   Fed. R. Evid. 803(4), adv. cmte. notes.

The Supreme Court has explained that this hearsay exception "rest[s] on the belief that certain statements are, by their nature, made for a purpose other than use in a prosecution and therefore should not be barred by hearsay prohibitions."   Michigan v. Bryant, 562 U.S. 344, 362 (2011) (citing Fed. R. Evid. 803(4) and other exceptions).   This echoes the Advisory Committee's logic that statements "made to a physician for purposes of diagnoses and treatment" should be admitted "in view of the patient's strong motivation to be truthful."   Fed. R. Evid. 803(4), adv. cmte. notes.

2.    Discussion

The government intends to admit at trial information from the records associated with John Doe-2's seven-day stay at North Shore University Hospital.   The records will be accompanied by a formal certification from an authorized employee affirming that the records meet the requirements of Federal Rule of Evidence 803(6).   The information offered from these records is admissible pursuant to Federal Rules of Evidence 803(4) and 803(6).

Pursuant to Federal Rule of Evidence 803(6), the government intends to introduce statements from hospital personnel related to John Doe-2's hospitalization, such as the time he arrived and was discharged, medical professionals' observations of his condition, the treatment he received, and the treating personnel's diagnoses and opinions.   These records also include narratives, such as these observations from an emergency department attending physician:

17

> On exam he has bilateral raccoon eyes and blood from his left ear.   He has diffuse ecchymoses on his body[.]   [H]e has severe tenderness to his left wrist and hand[.]   [W]e cut off zip ties and duct tape from his wrists and ankles.   He has abrasions versus burn marks on his bilateral buttocks.   Level 2 trauma was called on arrival.   Patient was given fentanyl . . . . [H]e is also covered in dirt.

Because this information all comes from records that are "properly authenticated and created in the regular course of business contemporaneously with the occurrence by a person with knowledge," they are "admissible as business records."   Gissinger, 2007 WL 2228153, at *4.

The government also intends to introduce statements from John Doe-2 found in these hospital records.   For example, a physician's assistant authored a progress note in the records, which states that John Doe-2 "c/o of [sic] being sexually assaulted with an artificial penis while he was kidnapped."   Additionally, the medical records document a psychiatric evaluation of John Doe-2 by two doctors:

> Patient reports that the last two days, he's had sxs c/w acute stress disorder including nightmares, "seeing things that are not there that I know are not real", reporting he cannot sleep, is easily startled.   Feels that he has been re experiencing the event as well, feeling trapped. Denies depressed mood, thoughts of wanting to die, hurt himself or end his life.   Denies HI.   Denies any additional psychotic type symptoms.   Reports that following this hospitalization, he is worried over what may happen to him regarding his safety from the people who kidnapped him. . . . He states that his family who lives in Bangladesh is aware of the entire incident that transpired prior to, the hospital as the attackers called the patient's parents on video while attacking him and told them "send us money or we will continue to hurt your son". [P]atient has been unable to speak to them since then as he no longer has a cell phone.   Discuss patient's need for mental health treatment at this time including PRN medications and psychotherapy which [he] is agreeable to.

Such statements fall in the heart of Federal Rule of Evidence 803(4) because they were made for the purposes of medical diagnosis or treatment discussing his "present symptoms or sensations; their inception; or their general cause."   Fed. R. Evid. 803(4).

Certain information from John Doe-2's medical records that the government intends to introduce contain a combination of material admissible pursuant to Federal Rules of

Evidence 803(4) and 803(6).  For example, the medical records include a "Prehospital Care Summary Report," which is a standardized form that contains information on the admission of a patient transported to a hospital by ambulance.   In addition to information like the ambulance's crew members, the timing of the ambulance call, assessments of his injuries, and vital statistics, it also includes a "Narrative History Text" section:

> Upon arrival found 22 year old male patient, standing on the side walk[.]  Chief complaint is assaulted[.]   Patient stated[:] [I] was held captive, they beat me up.   They tired [sic] me up and punch me in my face, they wanted $50000 from my father to pay.   . . . Patient's face arms legs were all bruised up. [H]e had a wire tie [o]n his left wrist.   Also on his left ankle had duct tape on his ankle with a nylon strap[.]   Physical exam had unknown loss of consciousness, []altered mental status . . . .[7]

The statements attributed to John Doe-2 are admissible under Federal Rule of Evidence 803(4) because he made them to medical professionals for "medical diagnoses or treatment" and they describe his "present symptoms" and "their general cause."   Fed. R. Evid. 803(4).   The statements regarding his "face arms legs" being "all bruised up" and the wire tie, duct tape, and nylon straps on his wrist and ankles, however, are the records made at the time by the ambulance drivers who transported him to the hospital.   Along with the other information in the Prehospital Care Report Summary, these contemporaneous observations of ambulance drivers about their personal observations in a standardized form that is introduced with a formal certification are admissible as business records under Federal Rule of Evidence 803(6).

---

[7]      Removed from this quote is the following: "Patient also stated that his captain [sic] said that they were the king of New York[.]"   The government does not intend to rely on Federal Rule of Evidence 803(4) to introduce statements in medical records in which John Doe-2 identifies his captors.

IV.   The Defendants' and Co-Conspirators' Out-of-Court Statements Are Admissible for Their Truth When Offered by the Government and Inadmissible When Offered by the Defendants

The government should be allowed to offer, in its case-in-chief, relevant statements by the defendants and their co-conspirators pursuant to Rule 801(d)(2)(A) and (E), and the defendants should be generally precluded from introducing their own statements, which are inadmissible hearsay.

1.   The Government Should Be Allowed to Admit Defendants' and Co-Conspirators' Statements

A defendant's or co-conspirator's out-of-court statement is not hearsay when introduced by the government in a criminal trial to prove the truth of the facts stated therein because it is an opposing party's statement under Federal Rule of Evidence 801(d)(2).   See Fed. R. Evid. 801(d)(2)(A) (establishing that a statement offered against an opposing party that "was made by the party in an individual or representative capacity" is not hearsay); id. 801(d)(2)(E) (same for statements "made by the party's coconspirator during and in furtherance of the conspiracy"); United States v. Russo, 302 F.3d 37, 43 (2d Cir. 2002) ("Statements made by the defendant may be introduced by the government in a criminal trial to prove the truth of the facts stated in them because they are admissions of an adverse party." (citing Fed. R. Evid. 801(d)(2)(A))).   The same is true of statements "made by the party's coconspirator[s] during and in furtherance of the conspiracy."   Fed. R. Evid. 801(d)(2)(E).

The government expects to introduce statements of the defendants and their co-conspirators through witness testimony as follows:

- Witness testimony from John Doe-2 and John Doe-3 regarding statements made by the defendants and their co-conspirators;

- Statements made by the defendants and their co-conspirators in audio recordings made during the kidnapping;

- Statements made by the defendants and their co-conspirators in text messages to each other and third parties shortly before the victims' abductions and during their captivity; and

- Statements made by the defendants during their post-arrest interrogations.

The statements made by Lubna and Ruhel Choudhury will be offered against them and therefore are admissible for their truth.   See Fed. R. Evid. 801(d)(2)(A); United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003).   The statements made by the co-conspirators are all made during and in furtherance of the conspiracy and therefore are also admissible for their truth.   See Fed. R. Evid. 801(d)(2)(E).

    2.    The Court Should Generally Preclude the Defendants from Admitting Their Own Statements or Their Co-Conspirators' Statements

The same statements, if offered by the defendants to prove their truth, would constitute hearsay and are thus ordinarily inadmissible.   In other words, the rules of evidence permit only the party opponent—in this case the government—to admit such statements.   See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003) ("[W]hile the Government was free to introduce the statement as an admission by a party-opponent, [the defendant] had no right to introduce it on his own.").   Were the law otherwise, a defendant "could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury."   United States v. McDaniel, 398 F.3d 540, 545 (6th Cir. 2005).

A limited exception is created by Rule 106, the rule of completeness. Rule 106 creates a narrow exception for the admissibility of hearsay statements only where their "admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant." United States v. Odiase, 788 F. App'x 760, 763 (2d Cir. 2019) (quoting Untied States v. Thiam, 934 F.3d 89, 96 (2d Cir. 2019)). The rule permits a defendant to introduce otherwise inadmissible hearsay statements only where he can show the statements are "essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact." United States v. Lyttle, 460 F. App'x 3, 7 (2d Cir. 2012) (emphasis added) (quoting Phoenix Assocs. III v. Stone, 60 F.3d 95, 102 (2d Cir. 1995)). A defendant bears the burden of proving that excluding the otherwise inadmissible statements would unfairly render the government's evidence "misleading, void of context or confusing." United States v. Ramsey, 2023 WL 2523193, at *3 (E.D.N.Y. Mar. 15, 2023) (alterations and internal quotation marks omitted). "Mere allusions by a party to 'fairness' or 'context' do not satisfy the party's burden to demonstrate why the evidence should be admitted." United States v. McMahon, No. 21-CR-265 (PKC), 2024 WL 896838, at *7 n.12 (E.D.N.Y. Mar. 1, 2024) (quoting United States v. Ramsey, No. 21-CR-495 (ARR), 2023 WL 2523193, at *3 (E.D.N.Y. Mar. 15, 2023)).

The Second Circuit has repeatedly excluded self-serving hearsay statements offered by a defendant that were unnecessary to explain or appropriately contextualize an already admitted statement. See, e.g., United States v. Williams, 930 F.3d 44, 61 (2d Cir. 2019) ("But the rule of completeness does not require the admission of self-serving exculpatory statements in all circumstances, and the mere fact that a suspect denies guilt before admitting it, does not—without more—mandate the admission of his self-serving denial." (citation omitted)); United States v. Fawwaz, 691 F. App'x 676, 678 (2d Cir. 2017) (affirming district court's refusal to admit

statements under rule of completeness where "admitted statements [were] independent of the omitted statements"); <u>United States v. Hill</u>, 658 F. App'x 600, 605 (2d Cir. 2016) (affirming district court's parsing of defendant's recorded statement to admit discrete inculpatory statements and exclude other self-serving statements that he was "innocent"); <u>United States v. Gonzalez</u>, 399 F. App'x 641, 645 (2d Cir. 2010) (affirming exclusion of portion of defendant's statement where admitted portion did not distort meaning of full statement); <u>United States v. Johnson</u>, 507 F.3d 793, 796 (2d. Cir. 2007) (same); <u>United States v. Jackson</u>, 180 F.3d 55, 73 (2d Cir. 1999) (rejecting claim under the completeness doctrine that later portions of conversation provided relevant context and noting that "the portions of the tape proffered by [defendant] consisted largely of [his] own self-serving statements, which, as offered by him, are inadmissible hearsay").  The defendants therefore should be precluded from introducing their own statements at trial, beyond the narrow exception provided by the rule of completeness.   <u>See, e.g.</u>, <u>United States v. Terry</u>, 702 F.2d 299, 314 (2d Cir. 1983) ("Rule 106 does not render admissible evidence that is otherwise inadmissible."); <u>Gonzalez</u>, 399 F. App'x at 645 (holding that rule of completeness cannot be used as a "mechanism to bypass hearsay rules").

V.    <u>The Court Should Admit Certain Out-of-Court Statements by John Doe-2, John Doe-3, and Certain Other Non-Parties to the Kidnapping</u>

The government also intends to offer in its case-in-chief evidence of certain statements made by John Doe-2, John Doe-3, and certain third parties with whom the defendants communicated.   As described below, these statements are admissible because they either fall within an exception to the hearsay rule, or are not hearsay at all.

1.    <u>Applicable Law</u>

<u>First</u>, Rule 803 of the Federal Rules of Evidence provides an exception to the general rule against hearsay for any statement "describing or explaining an event or condition,

made while or immediately after the declarant perceived it"—a "present sense impression."    Fed. R. Evid. 803(1).    "By its own terms, application of Rule 803(1) has three distinct requirements: (i) the statement must describe or explain the event perceived; (ii) the declarant must have in fact perceived the event described; and (iii) the description must be 'substantially contemporaneous' with the event in question."    Mejia-Valez, 855 F. Supp. at 613 (internal citations omitted). Because "in many, if not most, instances precise contemporaneity is not possible, . . . a slight lapse is allowable between the event perceived and the declarant's statement."    Id. (internal citation and quotation marks omitted omitted).    "[T]here is no per se rule indicating what time interval is too long."    Id. (citation and internal quotation marks omitted).

The reason for this exception is twofold.    First, the immediacy requirement reduces the opportunity for reflection and thus minimizes the likelihood of deception or fabrication on the part of the declarant.    Second, immediacy also reduces the likelihood that the declarant will have inaccurately remembered the event in question.    See United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002).

Second, Rule 803(3) of the Federal Rules of Evidence provides a very similar exception for "statement[s] of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)."    "[T]he reasons for the state of mind exception focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation."    United States v. Graham, No. 14-CR-500 (NSR), 2015 WL 6161292, at *7 (S.D.N.Y. Oct. 20, 2015) (quoting United States v. Cardascia, 951 F.2d 474, 487 (2d Cir.1991)).

Third, Rule 803(2) of the Federal Rules of Evidence provides an exception to the rule against hearsay for excited utterances.    An excited utterance is a statement "relating to a

startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). To qualify as an excited utterance, the proponent of an out-of-court statement must establish the following: (i) that a startling event occurred; (ii) that the declarant made the statement while under the stress of the excitement caused by the startling event; and (iii) that the declarant's statement relates to the startling event. See United States v. Brown, 254 F.3d 454, 458 (2d Cir. 2001).

"The rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability. An excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2)." United States v. Tocco, 135 F.3d 116, 127 (2d Cir. 1998). Rather, the focus of the exception is on "the psychological impact of the event itself" and whether the statement was made while the declarant was "under the stress of excitement caused" by that event. Jones, 299 F.3d at 112 & n.3 (internal quotation marks and citation omitted).

Fourth, a declarant's prior statement is not hearsay when a statement is not offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid 801(c)(2).

Fifth, as described above, a declarant's prior statement is admissible when made for medical diagnosis or treatment. See supra § III.

2.    Discussion

The government intends to admit certain prior statements from John Doe-2, John Doe-3, and other third parties through audio recordings, text messages, and testimony from John Doe-2 and John Doe-3. To be clear, the government does not intend to admit all prior statements from John Doe-2 and John Doe-3 or other third parties. For example, the government does not intend to admit the victims' prior statements to law enforcement. But see infra § VI (explaining circumstances in which prior consistent statements are admissible). However, as explained

25

further below, certain statements do fall into exceptions to or exclusions from the general rule against hearsay.   These statements include:

- John Doe-3's statements in text messages with Abu Chowdhury;

- Statements from John Doe-3 and a third party captured in videos in which Lubna and Abu Chowdhury demand information from the third party about Lubna's reputation and similar topics;

- Microsoft Teams messages from John Doe-2 to Lubna;

- Hours of audio recordings from one of Abu Chowdhury's phones from the night of May 10, 2023, which capture <u>inter alia</u> the interrogation, torture, and apparent drugging of John Doe-3; phone calls with third parties principally about Lubna's reputation; and phone calls between John Doe-2 and Lubna; and

- Statements from John Doe-2's father captured in audio recordings in which Abu Chowdhury and Lubna demand ransom payments from him.

One of the audio recordings from Abu Chowdhury's phone captures the horrific interrogation and torture of John Doe-3 at the hands of Lubna, Abu Chowdhury, and Shaidhual Chowdhury.   John Doe-3's statements during these periods of time are admissible under several exceptions.   Some of these statements are admissible as either present sense impressions under Rule 803(1) or "statement[s] of the declarant's then-existing . . . physical condition" under Rule 803(3).   Other statements describe his "then-existing . . . emotional [or] sensory . . . condition (such as mental feeling, pain, or bodily health)," under Rule 803(3) including statements of fear or pain in response to the kidnapping, violence and threats that he faced.   Moreover, his responses to the violence, sexual humiliation and threats can also be considered excited utterances because

26

such violence and threats are startling events, and the relevant statements were made while still under stress of such startling events and in direct response to the violence and threats.

Many of these statements are also admissible as non-hearsay because they are not offered for their truth.    "An out-of-court statement offered for some other purpose, such as to show that a statement was made, to demonstrate the statement's effect on the listener, or to show the circumstances under which subsequent events occurred, is not hearsay."    United States v. Certified Env't Servs., Inc., 753 F.3d 72, 89 (2d Cir. 2014) (citations omitted).    In particular, the government intends to show the defendants and their co-conspirators' interrogation of John Doe-3 and others concerning Lubna to demonstrate inter alia the defendants' motives in kidnapping him and the fact of his confinement.    Thus, all of John Doe-3's responses and statements concerning Lubna's reputation, what he has said about her, what he knows about others at their school, and similar topics are not offered for their truth.    The veracity of the statements themselves is entirely irrelevant to the case, but they go to the defendants' motives for the kidnapping.    The same is true for the responses to similar questions asked to others.    Additionally, some of the statements by John Doe-2, John Doe-3, and third parties are questions asked of Lubna, Chowdhury, and their co-conspirators, and, by definition, questions cannot be hearsay statements.    See United States v. Oguns, 921 F.2d 442, 449 (2d Cir. 1990) ("An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement." (citation omitted)).

An audio recording from Abu Chowdhury's phone also captures the phone calls between John Doe-2 and Lubna on the night of May 10, 2023 when they arrange to meet.    John Doe-2's statements during these calls are admissible not for their truth but rather for their effect on Lubna and Abu Chowdhury—to show their motive for kidnapping him and to explain their plot for kidnapping him.    For example, John Doe-2 tells Lubna he has alcohol for their meeting and

27

attempts to flirt with her; whether he in fact had alcohol or whether his flirtatious statements are actually true is irrelevant.   Rather, they show the co-conspirators' plan: to lure him into this kidnapping through the ruse of a fictitious date.

Similarly, the statements of John Doe-2's father and John Doe-2 during Abu Chowdhury's and Lubna's ransom shakedown are not offered for their truth.[8]   Rather, they are offered to show their effect on Abu Chowdhury and Lubna.   For example, John Doe-2's father tells his son's kidnappers: "I don't have the money on me right now," and "I cannot give the money before Sunday."   Those statements are not offered for their truth.   Instead, they would be presented for their effect on Abu Chowdhury who responds (presumably addressing John Doe-2): "[U/I] pick up my fucking calls. If you don't pick up my calls, I'll fucking hurt you every single time I put on [U/I].   Every time he misses my call, I'll pull out one of your motherfucking teeth. Explain that to him."   Likewise, John Doe-2's next statement to his father is also offered to show the effect on his father: "When he calls then [U/I] . . . pick up the call, talk to them, and make sure they get the money within the time you give them."

VI.  John Doe-2's and John Doe-3's Prior Consistent Statements Are Admissible as Non-Hearsay

If John Doe-2 or John Doe-3 testifies and one or both of the defendants attack his credibility, the government will seek to introduce as admissible under Rule 801(d)(1)(B) John

---

[8]     To be sure, Abu Chowdhury's and Lubna's statements demanding a ransom from John Doe-2's father are offered for their truth—that they were making a ransom demand.   Those statements, however, are admissible as non-hearsay under Federal Rule of Evidence 801(d)(2).

Doe-2's or John Doe-3's prior consistent statements to law enforcement and in video recordings from the kidnappings to rebut specific claims of inconsistencies.

    1.    <u>Applicable Law</u>

Pursuant to Rule 801(d)(1)(B), where a declarant-witness testifies and is subject to cross-examination, the witness's prior consistent statements are "not hearsay" when offered (i) "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying," or (ii) "to rehabilitate the declarant's credibility as a witness when attacked on another ground."   The Advisory Committee amended the Rule in 2014 to expand the reasons for which prior consistent statements may be offered, to admit "consistent statements that rebut . . . attacks on a witness—such as the charges of inconsistency or faulty memory."  Fed. R. Evid. 801 adv. cmte. note.   Prior consistent statements are admissible for their truth.  <u>United States v. Flores</u>, 945 F.3d 687, 705 (2d Cir. 2019).

Under the first prong of Rule 801(d)(1)(B), prior consistent statements are admissible to rebut a claim of improper influence or motive once the proponent establishes, by a preponderance of the evidence: "(1) that the prior consistent statement is consistent with the witness's in-court testimony; (2) that the prior consistent statement is being offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive; and (3) that the prior consistent statement was made prior to the time that the supposed motive to falsify arose."  <u>Phoenix Assocs. III</u>, 60 F.3d at 103.

Under the second prong of Rule 801(d)(1)(B), when offered to "rehabilitate the declarant's credibility," there is no established test for admissibility.   However, the Second Circuit has upheld the admissibility of prior consistent statements to rebut claims that the witness could not be trusted and that the testimony being provided was inconsistent with earlier statements.   For example, in <u>United States v. Purcell</u>, 967 F.3d 159, 196-97 (2d Cir. 2020), the Second Circuit

affirmed the admissibility of prior consistent statements of a sex trafficking victim, after she was cross-examined, concerning alleged inconsistencies between her testimony at trial and her prior statements to the police. "By introducing [a third party's] testimony, which recounted [the victim's] statements to police in full and largely matched the version of events that [the victim] had recounted at trial, the government plainly sought to rebut the charge of inconsistency and to rehabilitate [the victim's] credibility by placing the alleged discrepancies in context." Id. Similarly, in United States v. Flores, 945 F.3d 687, 705-06 (2d Cir. 2019), the Circuit affirmed the admissibility of an agent's contemporaneous notes to rebut the defendants' arguments in opening—albeit "brief and not their main point"—that, among other things, the jury could not rely on the agent's recollection of what had been said during those interviews.

Procedurally, Rule 801(d)(1)(B) can be triggered as early as opening statements. Flores, 945 F.3d at 706. In such circumstances, the government may introduce prior consistent statements in a witness's direct examination. Id. (finding Rule 801(d)(1)(B) "does not restrict admissibility to statement of a witness who has already been cross-examined"). Moreover, a witness's prior statements need not be "identical to a precise statement challenged" to be admissible. United States v. Ray, 2022 WL 813942, at *2 (S.D.N.Y. Mar. 16, 2022). Rather, it is sufficient that the defense "challenged statements on the same or closely related topics and that the prior statement operated not just to rehabilitate the witness's credibility generally but also to rehabilitate the witness's credibility with respect to the testimony that has been challenged." Id.

2. Discussion

The government expects John Doe-2 to testify that he was abducted and held against his will for over 60 hours, gruesomely beaten, stripped, and sexually abused, robbed, drugged, and tied up by a group of individuals that included the defendants. The government further expects John Doe-3 to testify that he was similarly abducted and held against his will,

30

gagged and tied up, threatened, drugged, and repeatedly beaten all over his body.   At trial, the defendants are likely to challenge, through both jury addresses and cross-examination, the victims' credibility on the basis that they are either mistaken in their recollections or intentionally misrepresenting events.   The government should be permitted to introduce John Doe-2's and John Doe-3's prior consistent statements, including their statements to law enforcement, to medical professionals, and in media files recovered from Abu Chowdhury's and Iffat Lubna's cell phones.[9] These statements would serve the purposes that <u>Purcell</u> identified as proper under Rule 801(d)(1)(B)—rebutting accusations of inconsistency and placing purported discrepancies in context, <u>see</u> <u>Purcell</u>, 967 F.3d at 196-97—and would therefore be admissible.

VII.    <u>The Court Should Admit Evidence Showing Consciousness of Guilt</u>

The government should be permitted to admit evidence of Ruhel Choudhury's flight because it shows his consciousness of guilt.

1.    <u>Applicable Law</u>

"Evidence of a party's consciousness of guilt may be relevant if reasonable inferences can be drawn from it and if the evidence is probative of guilt."   <u>United States v. Perez</u>, 387 F.3d 201, 209 (2d Cir. 2004).   Other acts reflecting such consciousness are admissible "if the court: 1) determines that the evidence is offered for 'a purpose other than to prove the defendant's bad character or criminal propensity,'; 2) determines that the evidence is relevant under Fed. R. Evid. 401 & 402, and is more probative than unfairly prejudicial under Fed. R. Evid. 403; and 3) provides an appropriate limiting instruction to the jury, if one is requested."   <u>United States v.</u>

---

[9]    As noted above, many of John Doe-2's and John Doe-3's statements in the kidnapping videos are admissible as non-hearsay or pursuant to hearsay exceptions.   <u>See</u> <u>supra</u> § V.   To the extent they are not, Rule 801(d) would allow their introduction in these circumstances.

Mickens, 926 F.2d 1323, 1328-29 (2d Cir. 1991) (citations omitted).   "[P]roof of defendant's flight after a charged crime occurred may be admissible even though that evidence might be subject to varying interpretations."   Perez, 387 F.3d at 209.

2.   Discussion

The government intends to introduce evidence that Ruhel Choudhury attempted to evade arrest after his indictment.   This evidence satisfies the three-part test that the Second Circuit has set out.   First, it is offered to show the defendant's consciousness of guilt, not his bad character or criminal propensity.   Second, the evidence easily clears the "low threshold, easily satisfied," United States v. Gramins, 939 F3d 429, 450 (2d Cir. 2019), for relevance under Rule 401.   The Second Circuit has expressly held consciousness of guilt evidence to be relevant, so long as "reasonable inferences can be drawn from it" and "the evidence is probative of guilt."   Perez, 387 F.3d at 209.   Here, two of Ruhel Choudhury's co-conspirators were arrested in July 2023, and the co-defendants named with him in the superseding indictment alongside him were all arrested on January 11, 2024.   His name was unsealed in the superseding indictment on February 7, 2024, but he continued to evade arrest and did not surrender until April 21, 2024.   He also admitted in a post-arrest statement that he was aware of the charges against him.   Here, one can reasonably infer that he was aware of the charges but fled because of his guilt.   Nor is this evidence, which addresses only Ruhel Choudhury's evasion of law enforcement with respect to his arrest on the present charges and not other post-indictment conduct, unduly prejudicial under Rule 403.   To the extent the Court finds that there is any potential prejudice, it can be mitigated through an instruction to the jury indicating that this evidence should be considered only for purposes of Ruhel Choudhury's consciousness of guilt.

VIII.    <u>Evidence of the March 27, 2023 Kidnapping of John Doe-1 Is Admissible Under Federal Rule of Evidence 404(b) Against Ruhel Choudhury</u>

At trial, the government will seek to introduce evidence that on or about March 27, 2023, Ruhel Choudhury also conspired to commit and committed the kidnapping of John Doe-1, as charged in Counts One and Two of the Indictment. For example, the government would introduce vehicle records, phone records, and limited audio and video evidence from Abu Chowdhury's cell phones reflecting Ruhel Choudhury's participation in the kidnapping of John Doe-1.

This evidence is admissible pursuant to Rule 404(b) to prove, among other things, intent, plan, knowledge, and absence of mistake.    Even if the Court were to determine that this evidence is not admissible in the first instance, the government should be permitted to introduce it in the event that Ruhel Choudhury argues or presents evidence that, with respect to the kidnappings of John Doe-2 and John Doe-3, he acted only under duress, without the intent to commit the kidnappings, or without knowledge of the conspiracy's objective.

1.    <u>Applicable Law</u>

Evidence of other acts is admissible pursuant to Rule 404(b) if offered for permissible purposes, including to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, among other uses.    Fed. R. Evid. 404(b)(2); <u>see</u> <u>United States v. Ortiz</u>, 857 F.2d 900, 903 (2d Cir. 1988).    The Second Circuit "has long adopted an '<u>inclusionary</u>' approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or acts 'is admissible for any purpose other than to show a defendant's criminal propensity.'"    <u>United States v. Paulino</u>, 445 F.3d 211, 221 (2d Cir. 2006) (quoting <u>United States v. Pitre</u>, 960 F.2d 1112, 1118-19 (2d Cir. 1992) (emphasis added)); <u>see also</u> <u>United States v. Mergen</u>, No. 06-CR-352 (NGG), 2010 WL 1423245, at *2 (E.D.N.Y. Apr. 9,

2010) ("[R]ebutting an affirmative defense is a valid non-propensity purpose for introducing [Rule 404(b)] evidence." (citing United States v. Rodriguez, 53 F.3d 545, 546 (2d Cir. 1995))).

Rule 404(b) evidence is only admissible if, under Rule 403, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or considerations of judicial economy such as the needless presentation of cumulative evidence. The Second Circuit has emphasized, however, that Rule 404(b) is a rule of broad reach and liberal application. See United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (noting that the rule permits admission of evidence for "any purpose" other than propensity) (citing Pitre, 960 F.2d at 1118)). The standard governing admissibility of Rule 404(b) evidence is well established:

> First, the district court must determine if the evidence is offered for a proper purpose, one other than to prove the defendant's bad character or criminal propensity. If the evidence is offered for a proper purpose, the district court must next determine if the evidence is relevant to an issue in the case, and, if relevant, whether its probative value is substantially outweighed by the danger of unfair prejudice [pursuant to Rule 403]. Finally, upon request, the district court must give an appropriate limiting instruction to the jury.

Pitre, 960 F.2d at 1119 (citation omitted). The Court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b), and its rulings will be reviewed only for abuse of discretion. See United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994).

2. Evidence of Ruhel Choudhury's Commission of the March 27, 2023 Kidnapping Satisfies the Standards of Admissibility Under Rule 404(b)

First, as relevant to the charges that will be presented to the jury, the government expects to demonstrate at trial that Ruhel Choudhury participated in kidnapping and conspired to kidnap John Doe-2 and John Doe-3 with Iffat Lubna and Abu Chowdhury. The evidence will show, for example, that (1) Ruhel Choudhury drove a vehicle that shuttled John Doe-2 and his captors around Queens, including to the ultimate location where John Doe-2 was tied up and left;

(2) John Doe-2 and John Doe-3 were both assaulted in vehicles and drugged; (3) Ruhel Choudhury was present for portions of these assaults; and (4) Ruhel Choudhury communicated with Abu Chowdhury leading up to and during the kidnappings of John Doe-2 and John Doe-3.

The evidence described above of Ruhel Choudhury's involvement in the March 23, 2023 kidnapping of John Doe-1, which involved a similar modus operandi, shows his knowledge, intent and plan, among other non-propensity considerations, in participating in the kidnappings charged in Counts Three through Six.   In all three instances, Ruhel Choudhury served primarily as the driver of the vehicle in which the kidnapping was taking place, and they involved a common co-conspirator in Abu Chowdhury.   Additionally, all three share several similarities further evincing knowledge or a lack of mistake on Ruhel Choudhury's part: the victims were confined to cars, driven around Queens, beaten and drugged, and shared similar identifying characteristics such as their race, limited English proficiency, and small stature.   Because the kidnapping of John Doe-1 predates the kidnappings of John Doe-2 and John Doe-3, Ruhel Choudhury's participation in this prior, similar kidnapping is evidence of, among other things, his intent, his plan, his knowledge, and the absence of mistake or accident with respect to the latter two kidnappings.

Furthermore, the conduct in the March 27, 2023 kidnapping of John Doe-1 is no more prejudicial than the conduct for which Ruhel Choudhury is charged at this trial.   In fact, the charges pertaining to John Doe-1 are exactly the same as those pertaining to John Doe-2 and John Doe-3—conspiracy to kidnap and kidnapping in violation of 18 U.S.C. § 1201(a)(1).   The proffered evidence regarding Ruhel Choudhury's prior bad acts is more probative than unfairly prejudicial and should not be precluded by Rule 403.   Evidence that is otherwise admissible does not become unfairly prejudicial merely because it concerns a defendant's prior conduct, and the defendant will not suffer unfair prejudice as a result of the introduction of this evidence.   See,

e.g., United States v. Matera, 489 F.3d 115, 120 (2d Cir. 2007); United States v. Mejia, 545 F.3d 179, 206-07 (2d Cir. 2008); United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994).   This is particularly so because the proffered bad acts are the same or of less severity than the charged conduct—i.e., a kidnapping and an assault.   United States v. Rosemond, 958 F.3d 111, 125 (2d Cir. 2020) (quoting United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002)).   Any prejudice, both with respect to Ruhel Choudhury who is charged in Counts One and Two, and with respect to Iffat Lubna, who is not, can be limited by an instruction to the jury.[10]

Therefore, under the standards for the admissibility of evidence under Rule 404(b) (see Pitre 960 F.2d at 1119), evidence of Ruhel Choudhury's commission of the March 27, 2023 kidnapping of John Doe-1 should be admitted under Rule 404(b) because it evinces his knowledge, intent, plan, consistent modus operandi, and absence of mistake or accident in participating in brutal, violent, and lengthy kidnappings with Abu Chowdhury. To the extent that Ruhel Choudhury disclaims knowledge that he was participating in a kidnapping, or claims that he was forced to do so, his commission of another similar kidnapping less than two months prior to John Doe-2 and John Doe-3's kidnappings will demonstrate knowledge, intent, plan, and an absence of mistake or accident.

Although the government submits that evidence of Ruhel Choudhury's commission of the March 27, 2023 kidnapping of John Doe-1 should be admitted regardless of the defendant's arguments, the government should at minimum be permitted to admit evidence of John Doe-1's kidnapping if Ruhel Choudhury argues or presents evidence at trial disavowing his knowledge of or intent with regard to John Doe-2's or John Doe-3's kidnapping.   Significantly, based on Ruhel

---

[10]    To be clear, the government will not make any argument or suggestion at trial that Lubna was involved in the March 27, 2023 kidnapping of John Doe-1.

Choudhury's post-arrest statements to law enforcement, the government anticipates that his defense may rely on an argument that he was an unwitting and/or unwilling participant in either John Doe-2's or John Doe-3's kidnapping, or both.    In particular, Ruhel Choudhury, after waiving his <u>Miranda</u> rights, told law enforcement that he had been "set up," that he had previously sold cars to the kidnappers, who took all of his money, that he had previously been beaten by Abu Chowdhury, and that he surrendered to law enforcement after he had run out of money and no one was willing to give him money.    Ruhel Choudhury also told law enforcement in this statement that he did not believe in the use of violence.    Ruhel Choudhury's commission of the March 23, 2023 kidnapping of John Doe-1 would directly contradict the contention that his participation in John Doe-2's and John Doe-3's kidnapping was involuntary, unknowing or under any sort of duress.

IX.    <u>The Defendants Should Be Precluded from Suggesting Evidence Was Unlawfully Obtained</u>

The defendants should be precluded from arguing, asking questions suggesting, or eliciting testimony before the jury that evidence was improperly or illegally obtained.    Such argument or evidence would be irrelevant and, even if it had some arguable probative value, that value would be substantially outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, and undue delay.    <u>See</u> Fed. R. Evid. 403; <u>United States v. Otufale</u>, No. 24-CR-170 (KAM), 2024 WL 3391094, at *3 (E.D.N.Y. July 12, 2024) ("The legality of the searches that occurred in this case is collateral to whether Otufale and Lazarre actually committed the offenses charged in the Indictment.    Any evidence regarding the legality of the searches thus must be excluded as irrelevant." (citing Fed. R. Evid. 402)).

Additionally, Federal Rule of Evidence 104 makes plain that the Court decides "preliminary question[s]," including whether evidence is admissible, outside the presence of the

jury.  Questions concerning the lawfulness of investigative interviews or searches fall squarely within Rule 104 and thus ought not to be litigated (or relitigated) in front of the jury.  See United States v. Lights, No. 15-CR-721 (RWS), 2016 WL 7098633, at *1-2 (S.D.N.Y. Dec. 5, 2016) ("This issue [of the legality of an investigative search] has been litigated and decided.  No reference to the illegality of the stop or subsequent searches will be permitted at trial."); see also United States v. Stein, 473 F. Supp. 2d 597, 601 (S.D.N.Y. 2007) (explaining that "a question of law for the Court" is "a matter on which it would be inappropriate to take evidence before a jury").

The government does not plan to introduce the evidence that one of the two defendants in this trial successfully moved to exclude— a portion of Lubna's post-arrest statement. With respect to the other evidence suppressed by the Court—evidence from co-defendant Abu Chowdhury's "Red Phone"—these defendants did not move to suppress that evidence as to themselves, likely because they would not have had standing to do so, as a "defendant does not have a privacy interest in the contents of a phone that does not belong to her."  United States v. Salman, No. 24-CR-206 (NCM), 2025 WL 3089279, at *4 (E.D.N.Y. Nov. 5, 2025).  Not only did these defendants not seek to suppress Red Phone evidence, but they specifically filed letters in response to an order from the Court stating that they were not moving to suppress that evidence. See ECF Nos. 385, 386.  Any arguments regarding Red Phone evidence or other evidence not subject to motions to suppress by these defendants are now waived.  See United States v. Howard, 998 F.2d 42, 52 (2d Cir. 1993) ("The failure to file a timely motion [to suppress] constitutes a waiver."); United States v. Wilson, 11 F.3d 346, 353 (2d Cir. 1993) (finding waiver where defendant filed suppression motion three weeks after court-imposed deadline for such motions).

Furthermore, these defendants cannot now re-argue other unsuccessful aspects of co-defendant Abu Chowdhury's motion to suppress because, again, they lack standing to do so,

and trial is not the appropriate venue for relitigating suppression issues.  See, e.g., United States v. Sebastian, 497 F.2d 1267, 1270 (2d Cir. 1974) ("[A] hearing as to admissibility of challenged evidence . . . cannot be relitigated later before the trier of fact.").  The Court should therefore preclude argument and evidence on the legality of the manner in which evidence was obtained.

X.    Cross-Examination on John Doe-2's Criminal History and Prior Acts Should Be Limited

The government anticipates that the defendants will seek to attack John Doe-2's character for truthfulness during cross-examination by presenting evidence of two convictions (for money laundering conspiracy and wire fraud conspiracy).   To the government's knowledge, all conduct related to these convictions post-dates his kidnapping and is unrelated to his kidnapping at the hands of these defendants and their co-conspirators.   If defendants engage in such a line of inquiry, evidence regarding these convictions should limited to the "'essential facts' of [the] convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed."   United States v. Estrada, 430 F.3d 606, 615 (2d Cir. 2005) (quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 609.20[2] at 609-57 (2d ed. 2005)); see United States v. Martinez, No. 17-CR-281 (BMC) (E.D.N.Y. Dec. 18, 2017), ECF No.34 (granting motion in limine to limit cross-examination on witnesses' prior convictions to same essential facts and precluding eliciting "further details about the sentence or the underlying crime").   This limitation would avoid distraction of the jury, undue delay, and the risk of unfair prejudice to the government.   Cf. McCormick on Evidence § 193.2 ("Learning of the victim's bad character could lead the jury to think that the victim merely 'got what he deserved' and to acquit for that reason.").

Furthermore, the defendants should not be permitted to cross-examine John Doe-2 with respect to an April 2023 arrest in Queens, New York, for which he was charged with assault in the third degree and harassment in the second degree under New York State law.   These

charges—a misdemeanor and a violation, respectively—were adjourned in contemplation of dismissal and John Doe-2 was not convicted.   They are not probative of John Doe-2's character for truthfulness.   See United States v. Clanton, 769 F. Supp. 3d 147, 156 (E.D.N.Y. 2024) ("Prior arrests not resulting in conviction and lacking conduct that bears on a witness's character for truthfulness are inadmissible pursuant to 608(b)."); United States v. Alberti, 470 F.2d 878, 882 (2d Cir. 1972) (cross-examination of witness regarding third-degree assault conviction properly precluded because "conduct involved does not relate to truthfulness").

XI.   The Defendants Should Not Be Permitted to Cross-Examine Witnesses with Non-Verbatim Reports That Have Not Been Signed or Adopted by the Witness or Suggest to the Jury that the Contents of an Investigative Report Are Statements of the Witness

The government will provide material pursuant to 18 U.S.C. § 3500, including reports summarizing investigators' interviews with government witnesses.   These reports were not reviewed or adopted by any of the government witnesses.   Moreover, they were finished after the interviews were completed and reflect the thought processes and interpretations of the agents, and they do not constitute verbatim recitals or transcripts of any of the witnesses' statements.   The Court should not permit the defendants to cross-examine witnesses as if they were the witness's own statements.

1.   Applicable Law

A party may impeach a witness with a prior inconsistent statement of that witness, but the statement must be the witness's own statement that he or she either made or adopted.   See Fed. R. Evid. 613; United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992) (concluding that the trial court did not err in refusing to admit prosecutor's notes taken during debriefing of witness, and explaining that a "third party's characterization" of a witness's statement does not constitute a prior statement of that witness "unless the witness has subscribed to that characterization"); United States v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written

40

statement of the FBI agent was not attributable to [the witness]," it was "properly rejected as a prior inconsistent statement"). The problem with using a third party's summary or characterization of the witness's statement to impeach is "one of relevancy": "If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible." Almonte, 956 F.2d at 29.

The Jencks Act governs the discoverability of a witness's prior statements, and its definition of "statement" accords with Rule 613(a) and applicable case law on proper impeachment using prior inconsistent statements. Under the Jencks Act, a statement means "a written statement made by said witness and signed or otherwise adopted or approved by him," a recording or transcription that "is substantially [a] verbatim recital of an oral statement made by said witness and recorded contemporaneously," or a statement made by a witness to the grand jury. 18 U.S.C. § 3500(e). Because the Jencks Act is meant to restrict a defendant's use of discoverable statements for impeachment, "only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment." Palermo v. United States, 360 U.S. 343, 349, 352 (1959). An "agent's interpretations and impressions" of a witness do not fall within the purview of the Jencks Act. Id. at 352-53.

2.    Discussion

The statements in the above-described reports are not statements of any of the government's witnesses and therefore cannot be used for impeachment and should not be read aloud or shown to the jury. "A witness may only be impeached by his or her own statements, see Fed. R. Evid. 613(b), not notes made by other parties about what they said, unless the witness has adopted or approved those notes." United States v. Romanello, 22-CR-194 (EK), 2023 WL 8283435, at *2 (E.D.N.Y. Nov. 27, 2023) (granting motion to preclude use of agent reports of

41

witness interviews to impeach witnesses); see also Leonardi, 623 F.2d at 757 ("[T]he written statement of [an] FBI agent was not attributable to the [interviewee].")). The Court should therefore preclude defense counsel from quoting, publishing or suggesting to the jury in any way that the content of an agent report constitutes a statement of the witness.

The government will produce summaries of witness interviews prepared by law enforcement. Law enforcement reports summarizing investigators' interviews with government witnesses were not reviewed or adopted by any of the government witnesses, nor do they constitute verbatim recitals or transcripts of any of the witnesses' statements.[11] As a result, the statements in these reports are not statements of any of the government's witnesses (other than the reports' authors, if called to testify at trial), cannot be used for impeachment, and should not be read aloud or shown to the jury. See Almonte, 956 F.2d at 29; Leonardi, 623 F.2d at 757. The Court should therefore preclude any use or suggestion by defense counsel that a statement in a law enforcement summary report is a statement of the witness being interviewed.[12]

XII.  **The Court Should Preclude Evidence and Arguments That Are Irrelevant, Are Unfairly Prejudicial, or Invite Jury Nullification**

The Court should preclude the defendants from injecting into the trial impermissible evidence, questioning, testimony or arguments designed to encourage jury

---

[11]    These reports would, however, constitute prior statements of the agents or officers who prepared the report if they are called as a witness to testify regarding the subject matter contained in the report.

[12]    The government acknowledges that Lubna or Choudhury's counsel may ask a witness whether he or she made a statement that is reflected in a law enforcement report. However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the report's contents as a prior inconsistent statement. Additionally, if a witness says that he or she does not remember a fact, the defense may attempt to refresh a witness's recollection by showing the witness the report, but only if the defense does so in a manner that does not imply that the report is the witness's own statement or publish its contents to the jury.

42

nullification, engender sympathy for the defendants, or confuse issues.    Such evidence, questioning, testimony, and arguments are improper and would distract from the only issue properly before the jury: the defendants' guilt or innocence.    They should be precluded.

1.    Applicable Law

Under Federal Rule of Evidence 402, "irrelevant evidence is not admissible" at trial, and, under Federal Rule of Evidence 403, a court may exclude even relevant evidence, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."    See United States v. Miller, 626 F.3d 682, 689-90 (2d Cir. 2010).    A defendant is entitled to present a defense only if it has a foundation in the evidence, see United States v. Kwong, 69 F.3d 663, 667 (2d Cir. 1995), and so long as it does not fail as a matter of law, see United States v. Bakhtiari, 913 F.2d 1053, 1057 (2d Cir. 1990).    If the defense does not have a basis in fact or law, a court should not allow the defendant to present the evidence or advance the argument to the jury.    See United States v. Paul, 110 F.3d 869, 871 (2d Cir. 1997); United States v. Edwards, 101 F.3d 17, 20 (2d Cir. 1996) (holding that a "[d]efendant is not entitled to a jury charge based on a theory that the court properly found to be invalid and irrelevant and hence without foundation") (citation omitted).

Courts have broad discretion to exclude evidence if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, adv. cmte. notes; see United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009) ("District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice.").    Indeed, when evidence is of limited probative value, it should be excluded if it has the "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses."    Miller, 641 F.

43

Supp. 2d at 167; see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had a son with cerebral palsy); United States v. Battaglia, No. 05-cr-774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); United States v. Harris, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

Relatedly, a defendant is not entitled to advance an argument or introduce evidence to obtain an acquittal or mistrial through jury nullification. A defendant's attempt to focus the jury on prejudice or public opinion in coming to a verdict, rather than on the evidence and facts before it, "subverts the jury's solemn duty to 'take the law from the court, and apply that law to the facts of the case as they find them to be from the evidence.'" See In re United States, 945 F.3d 616, 627 (2d Cir. 2019) (quoting Sparf v. United States, 156 U.S. 51, 102 (1895)). Trial courts have a duty to forestall or prevent such conduct. United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent"); see also United States v. Trujillo, 714 F.2d 102, 106 (11th Cir. 1983) ("We therefore join with those courts which hold that defense counsel may not argue jury nullification during closing argument"); United States v. Díaz-Colón, 651 F. Supp. 3d 468, 480 (D.P.R. 2023) ("This Court possesses the discretion to block defense attorney's attempts to serenade a jury with the siren song of nullification, and may instruct the jury on the dimensions of their duty to the exclusion of jury nullification") (citation and quotation marks omitted).

44

2.    Discussion

    a.    <u>The Defendants Should Be Precluded from Introducing Evidence or Argument Concerning Personal Circumstances, Specific Instances of Good Character or Lack of Criminal History</u>

At this time, it is unclear what evidence, if any, the defendants may seek to introduce concerning their personal history, family circumstances or character.   Lubna may try to engender sympathy by presenting evidence regarding the child she shares with her co-conspirator Abu Chowdhury.   Such evidence should be precluded as irrelevant because it has no bearing on whether the defendants kidnapped or conspired to kidnap John Doe-2 or John Doe-3.   See Fed. R. Evid. 403, adv. cmte. notes (discussing exclusion to avoid "risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme"); <u>United States v. Konstantinovskiy</u>, No. 19-CR-408 (MKB), 2024 WL 3360379, at *11 (E.D.N.Y. July 10, 2024) (summarizing cases where evidence of personal circumstances was precluded).   Likewise, any evidence or argument concerning the defendants' lack of criminal history is irrelevant unless and until he or she testifies, and even then, it is admissible only for the limited purpose of allowing the jurors to gauge the defendant's credibility.   See <u>United States v. Blackwell</u>, 853 F.2d 86, 88 (2d Cir. 1988) (noting the "relatively low probative value" of this evidence).   Thus, such evidence becomes relevant only if the defendants testify, and then for the limited purpose of providing background information relating to his credibility as a witness.

    b.    <u>The Court Should Preclude References to Potential Punishment and Collateral Consequences</u>

Punishment and other collateral consequences of a conviction are considerations that are irrelevant to the sole issue before the jury—whether the defendants are guilty of the charged offenses.   See <u>Shannon v. United States</u>, 512 U.S. 573, 579 (1994) ("Information

regarding the consequences of a verdict is . . . irrelevant to the jury's task."). Indeed, permitting evidence and argument on this topic may improperly "invite[] [jurors] to ponder matters that are not within their province, distract[] them from their factfinding responsibilities, and creates[] a strong possibility of confusion." Id. For these reasons, jurors are routinely instructed not to consider a defendant's potential punishment in determining the defendant's guilt. See Sand et al., Modern Federal Jury Instructions, Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed . . . [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted)); United States v. Heslop, 225 F.3d 647, at *3 (2d Cir. 2000) (summary order) (affirming propriety of instruction that jury must not consider potential punishment); United States v. Watts, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion [] would result.").

Consistent with the above, the Court should preclude the defendants from referencing possible consequences of conviction, including but not limited to collateral immigration consequences such as deportation, which are wholly irrelevant to the jury's task of determining guilt. Here, the only purpose for invoking punishment or immigration consequences at trial would be an "attempt[] to serenade [the] jury with the siren song of nullification," United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993), which the court has a duty to prevent, United States v. Thomas, 116 F.3d 606, 616 (2d Cir. 1997); see, e.g., United States v. Mencia-Hernandez, No. 23-CR-393 (AMN), 2025 WL 2355624, at *7 (N.D.N.Y. July 10, 2025).

XIII.    <u>The Defendants Should Be Ordered to Disclose Discovery and Trial Exhibits</u>

The defendants must disclose documents that they intend to introduce at trial to affirmatively support their theory of the case, and the government requests that the Court order the defendants to abide by Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure.

1.    <u>Applicable Law</u>

Rule 16(b) of the Federal Rules of Criminal Procedure requires a defendant to provide the government with documents and records that the defendant "intends to use . . . in the defendant's case-in-chief at trial."  Fed. R. Crim. P. 16(b)(1)(A).  Rule 16 does not require a defendant to disclose documents he intends to use for purposes of cross-examining a government witness.  However, Rule 16 does encompass a document the defendant seeks to admit into evidence to affirmatively support his theory of the case, even if he intends to admit such document while cross-examining a witness during the government's case in chief.

As explained in <u>United States v. Hsia</u>, 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000):

> A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense." Black's Law Dictionary 207 (7th ed. 1999).  Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may be used to support her defense . . . . The cross-examination of these and other government witnesses therefore is properly seen as part of defendant's case-in-chief if it buttresses her theory of the case.

<u>Id.</u>  <u>Hsia</u> distinguished documents introduced by a defendant via a government witness—which do fall within Rule 16 and should be disclosed—from documents used by a defendant "merely to impeach a government witness, and not as affirmative evidence in furtherance of [the defendant's] theory of the case, it is not part of [the defendant's] case-in-chief."  <u>Id.</u> at *2 n.1.

Courts in this district have repeatedly held that a defendant must produce in advance any "exhibit that will not be used <u>solely</u> for impeachment purposes," even if the defendant intends

47

to introduce such exhibit during cross-examination of a government witness.  United States v. Aguilar, No. 20-CR-390 (ENV), 2024 WL 3629471, at *1 (E.D.N.Y. July 15, 2024) (ordering defendant to "disclose any documents he intends to use in his case-in-chief, including any exhibit that he intends to use during cross-examination of a government witness, where such exhibit with not be used solely for impeachment, no later than two weeks prior to the start of trial"); United States v. Smothers, No. 20-CR-213 (KAM), 2023 WL 348870, at *22 (E.D.N.Y. Jan. 20, 2023); United States v. Napout, No. 15-CR-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) (holding that "Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant").  That obligation extends to material produced by the government in discovery that a defendant intends to use as an exhibit.  See Aguilar, No. 20-CR-390 (ENV) (E.D.N.Y. July 15, 2024), ECF No. 362 at 26 (requiring production of defense exhibits "without regard to whether the exhibit was produced by the government in discovery"); Smothers, 2023 WL 348870, at *22 (requiring advance production of defense exhibits "regardless of whether such an exhibit is in the defense's sole custody").  Federal Rule of Criminal Procedure 26.2 also requires a defendant to produce for any defense witness "any statement of the witness that is in their possession that relates to the subject matter of the witness's testimony."  Such documents are customarily produced at least two days before a defense witness testifies.  See, e.g., United States v. Fox, No. 23-CR-227 (NGG), 2025 WL 2076664, at *23 (E.D.N.Y. July 23, 2025) (granting government motion in limine requiring defendant to produce Rule 26.2 materials "no later than two days before a given witness's testimony"); United States v. Ayers, No. 20-CR-239 (BMC), 2024 WL 1158686, at *15 (E.D.N.Y. Mar. 18, 2024) (same).

2.    <u>Discussion</u>

To date, the defendants have not disclosed any documents that they intend to introduce at trial.   Accordingly, to avoid gamesmanship, unfair surprise, and undue delay, the government respectfully requests that the Court order the defendants to identify any exhibits they intend to introduce during the government's case (<u>i.e.</u>, not those documents to be used for impeachment purposes only) or any defense case no later than two weeks prior to the start of the trial.   Moreover, the government respectfully submits that to avoid delay in the upcoming trial, the Court should set a schedule for disclosure of the statements of any defense witnesses other than the defendant himself.   <u>See</u> Fed. R. Crim. P. 26.2.   The government proposes that Rule 26.2 material should be provided no later than two days before any defense witness testifies.

## **<u>CONCLUSION</u>**

For the reasons set forth above, the government respectfully submits that the Court should grant the government's motions <u>in limine</u>.

Dated: Brooklyn, New York
        January 30, 2026

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York


        /s/
Stephanie Pak
Vincent Chiappini
Joshua D. Tannen
Assistant U.S. Attorneys
(718) 254-7000


cc:    Clerk of the Court (NRM) (by ECF)
       Defense counsel (by ECF)